# Levine *v.* City of Pittsburgh, Appellant.

*Negligence—Municipalities—City street — Bridge — Projecting
beam—Dangerous passageway—Vehicle driver—Contributory neg-
ligence.*

1. It is the duty of a city to construct and maintain its public
highways so they shall be reasonably safe and convenient for
ordinary use and travel.   In performing this duty it is bound to
use ordinary care and diligence, but is not bound to provide against
the possibility of an accident, nor would a mere error in judgment
in laying out the way or adopting the plan be negligence.

2. The general rule that a municipal corporation is not liable
for injuries caused by its works constructed upon a faulty plan
does not exempt it from liability if that plan leaves the streets
in an unsafe condition for public use.

3. In an action against a municipality to recover damages for
personal injuries sustained by plaintiff by being struck by a
projecting beam of a bridge while plaintiff was driving from the
high front seat of a wagon, the case was for the jury and a verdict
and judgment for the plaintiff will be sustained where it appears
that plaintiff was unfamiliar with the locality; that as he was

turning from one street into another which ran parallel to and partly beneath the bridge he saw the bridge but could not distinguish very well what was under it, that after making the turn the horse had taken a few steps when plaintiff saw the beam too late to avoid being struck by it.

Argued Oct. 22, 1915. Appeal, No. 140, Oct. T., 1915, by defendant, from judgment of C. P. Allegheny Co., July T., 1913, No. 1615, on verdict for plaintiff in case of Samuel Levine v. City of Pittsburgh. Before BROWN, C. J., MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries.

The facts appear in the following opinion of SHAFER, P. J., sur defendant's motion for a new trial and for judgment n. o. v.:

The action was for personal injuries alleged to have been caused by the negligence of the city in maintaining a highway with the beams of a bridge extending over it in such a way as to be dangerous to the traveling public. Elizabeth street, in the City of Pittsburgh, is of the width of fifty feet, and some years ago crossed the B. & O. Railroad at grade. Roma alley, parallel with and a short distance from the railroad, opened into Elizabeth street. In order to avoid the grade crossing on Elizabeth street the city caused to be built a bridge forty feet in width over the railroad, sloping from the highest point, which is over the railroad, two or three hundred feet each way down to the original level of the ground. The outside edge of this bridge was six feet from the line of Elizabeth street on the side in which Roma alley entered and four feet from the other side. The bridge was supported on two rows of pillars, which were some twelve feet from the side of the street involved in this case, and the foot walk of the bridge was supported on iron beams which extended about six feet beyond the lines of pillars. All of Elizabeth street under the bridge was closed to travel except the part which

extended from the opening of Roma alley along the side
of the bridge and under it out to the next cross-street
at the original level of Elizabeth street.  Roma alley was
paved up to the side of Elizabeth street, and the part of
Elizabeth street left to travel was unpaved.  Just at the
turn from Roma alley into this lower part of Elizabeth
street the projecting beam of the bridge was 7 feet 11
inches above the ground, and, of course, the other beams,
going away from the railroad, were successively nearer
the ground until they came down to its level.  The plain-
tiff was driving a furniture wagon, which had no cover
but had a high seat in front.  He was unacquainted with
the locality.  He drove along Roma alley toward the
bridge and turned to the left to go out along the open
part of Elizabeth street which, as has been stated, was
six feet wide from the edge of the bridge to the property
line.  It was broad daylight, and he says he saw the
bridge but could not distinguish very well what was
under it, because it was closed up with buildings on the
other side.  His account of the matter is, "I made the
turn into Elizabeth street and the horse made a few
steps and I came to the beam.  I did not see it before,
and when I did see it I just had enough time to bend my
head down and pull the horse back and I was doubled
up."  He bent forward as far as he could, but the beam
struck him in the small of the back and so injured him
that he is completely crippled and unable to walk.
There was evidence that the beam at this turn had
caught a number of covered wagons and wagons with
umbrellas, etc., before this time.  The question was sub-
mitted to the jury as to whether or not, considering the
nature of the street, the city had furnished a highway
reasonably safe for public travel under the circum-
stances.  There was no question of negligence of the city
in not keeping the street in good repair, and the city
relies upon the general rule that a municipality is not
liable for lack of good judgment in constructing its
works, or for constructing them upon a defective plan.

The general rule is that it is the duty of the city to construct and maintain its public highways so they shall be reasonably safe and convenient for ordinary use and travel.  In performing this duty it is bound to use ordinary care and diligence, but is not bound to provide against the possibility of an accident; nor would a mere error in judgment in laying out the way or adopting the plan be negligence: McIntyre v. City of Pittsburgh, 238 Pa. 524.  In that case the injury was caused by the building of steps on what was alleged to be a dangerous plan, and that case is relied upon by the defendant as governing the present one.  The plaintiff relies upon the rule laid down in Allentown v. Kramer, 73 Pa. 406, followed in Krug v. St. Mary's Borough, 152 Pa. 30. To what extent and under what circumstances a municipal corporation is to be held liable for injuries caused by its works constructed upon a faulty plan is a question which has been much discussed in other jurisdictions.  The cases are collected in 4 Dillion on Municipal Corporations, 5th Ed., Sec. 1717 and notes, where the learned author expresses the opinion that the principle that actionable negligence cannot be predicated upon the plan itself should not go so far as to exempt from liability if that plan leaves the streets in an unsafe condition for public use.  In the present case it was not in fact the plan of the bridge which caused the injury, as no doubt the bridge was built upon a proper plan for the construction of the bridge itself.  The injury was caused by leaving open to public use a narrow strip of the original street, with beams extending over it in such a way as to lead those using the street into danger.  It would seem to be much the same as the case of a narrow street left with a precipice at one side of it which was not guarded.  Upon a review of all the circumstances of the case we are of opinion that the plaintiff should be allowed to have judgment on his verdict, which, in view of the injury he received, was very moderate.

Verdict for plaintiff for $5,500, and judgment thereon. Defendant appealed.

*Errors assigned* were in overruling defendant's motion for judgment n. o. v., and in refusing a new trial.

*Thomas M. Benner,* with him *Charles A. O'Brien,* for appellant.

*Joseph Stadtfeld,* for appellee.

PER CURIAM, January 3, 1916:

This judgment is affirmed on the opinion of the court below overruling defendant's motion for judgment n. o. v. and refusing a new trial.